IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

United States of America

      v.                                                Case No. 6:21-CR-19-NKM

Najalaek Walker

## Defendant's sentencing memorandum

Mr. Walker requests this court sentence him to thirty-three months of incarceration and three years of supervised release. Because he is indigent, he asks the court not to impose a fine, given that he could not pay a guideline fine and imposing one would not advance the purposes of punishment. In making this request, Mr. Walker acknowledges that he is requesting the court vary from the guidelines and impose a sentence below that recommendation. However, the guidelines overstate the danger of the crimes of which he was convicted and recommend a sentence that would needlessly incarcerate Mr. Walker without providing societal benefit.

**Mr. Walker's early life hindered his chances at living without interacting with the criminal legal system.**

Mr. Walker met his father behind bars, and has only ever known his father as someone who lives in prison because he was convicted of murder around the same time that Najalaek was born. Mr. Walker was denied the chance to have a strong, positive paternal role model as a regular part of his life. And yet, his mother still made sure to bring Najalaek to visit his father and keep him apart of his life. This country's decision to imprison people for decades has discursive effects on society—one consequence is that many young men grow up without fathers in their daily life just like Najalaek did.

His mother struggled to raise a family with the low wages afforded to certified nursing assistants,, but growing up in poverty in this country has the strange effect of disguising what one is going through. When asked if he had clothes and food growing up, Mr. Walker's answer was yes. But did his family struggle to give him food? Yes. And was that food quality and nutritious? Not really, no. Fruits and vegetables are a luxury item in this country not easily afforded by families supported by a single parent working a low-wage job.

Mr. Walker also reported having joyful experiences in his youth—getting a new outfit each Easter and having presents at Christmas and his birthday. Mr. Walker's mother struggled and worked hard to make his life seem as normal as possible—and his life was relatively normal: he grew up a poor boy in an impoverished area with a loving mother doing her level best to raise her family.

Mr. Walker never finished high school, though he understands that receiving his GED would benefit his life. Partly as a consequence of leaving school, Mr. Walker has never been employed in any legitimate capacity. He has never paid taxes. He has also never been someone whom society has offered a job, and he never identified with people able to live a life outside the criminal legal system.

**Growing up a young Black man in America ensures that a person will interact with the criminal legal system.**

To be clear: Mr. Walker does not make these arguments blaming his circumstances for why he is before this court. However, the fact that Mr. Walker accepts responsibility for his actions does not diminish that he did not receive a fair shake at life. When it comes to Mr. Walker's criminal history, one cannot help but consider that his race likely played a role in the number of his convictions. After all, the sentencing guidelines do not consider how many crimes a defendant has committed, but how many he has been convicted of.

Many of the Mr. Walker's convictions in the PSR start with a general description of how the police came to target Mr. Walker, and one cannot wonder how impactful Mr. Walker's race was in that decision. For example, Mr. Walker's conviction at Paragraph 36 appears to have begun because the police targeted him for jay walking. Counsel has represented many people who were stopped by the police allegedly for jay walking—not a single one has been white.

Another conviction was for Mr. Walker being in the passenger seat of a vehicle and somehow possessing a small baggie of a tiny amount of drugs found under the rear seat—a seat in which he was not sitting and in a vehicle being driven by and belonging to someone else. *See* Dkt. 70 at Paragraph 37. Many of the other charges resulted from speeding. And, to be fair, Mr. Walker often ran from police when they tried to stop him. But just yesterday the Vice President attended a funeral for yet another young Black man killed by police. Tyree Nichol's death reminded many white people in this country of why young Black men often run from police: when they are stopped, they can easily wind up dead. And they have wound up dead for generations.

**Mr. Walker's conduct warrants a sentence lower than his advisory guidelines.**

Mr. Walker's case also demonstrates how ineffective this country's drug and gun laws are at keeping certain parts of society safe. Mr. Walker had a gun because he was running for his life and wanted to be able to protect himself. Unlike many cases in which people are charged with illegally possessing a firearm, Mr. Walker actually was in imminent danger of death—even according to the government. And for the non-violent crime of a small amount of drugs and a weapon for his own possession, Mr. Walker is facing a recommended sentence of forty-one to fifty-one months.

Mr. Walker agrees that Probation correctly calculated the guidelines. However, he urges the court to vary below the guidelines because they artificially inflate the

recommended sentences of people convicted of possessing firearms and a small amount of drugs. The guidelines add four points to a firearm conviction if the person possessed that firearm in connection with another felony offense—including the simple offense of drug possession. However, if the defendant were facing a guideline calculation for possession of drugs (perhaps because the person had a much higher quantity of drugs), the person would only receive a two-level increase for possessing a firearm. In effect, defendants who possess a small amount of drugs receive a greater enhancement for possessing a firearm than do defendants who possess a large amount of drugs. If the guidelines consistently increased punishment for drugs and firearms, Mr. Walker's base offense level would be two-points lower, yielding a recommended sentence of thirty-three to forty-one months. Because he possessed a firearm while in imminent danger of death for the purposes of his own protection, and because he did not injure or harm another person, a sentence at the low end of that guideline range is sufficient, but not greater than necessary.

## Conclusion

Mr. Walker requests this court vary below his advisory guidelines and impose a sentence of thirty-three months. That sentence is within the guideline range if the guidelines identically treated the possession of weapons under the drug and firearm guidelines. More importantly, such a sentence is sufficient for the conduct at issue in this case: the non-violent possession of a firearm by someone in legitimate fear for his life and the possession of a small amount of drugs. This court cannot ignore the role that Mr. Walker's race likely played in increasing the number of times he was stopped, arrested, and convicted for conduct that is often ignored when committed by others. A sentence of thirty three months is sufficient, but not greater than necessary under the circumstances.

Respectfully submitted,


/s/ Benjamin Schiffelbein
210 First Street SW, Ste 400
Roanoke, VA 24011
540 777 0880
Benjamin_Schiffelbein@fd.org
Counsel for Mr. Walker